(No. 89098.—■■■■■)

PHOENIX BOND & INDEMNITY COMPANY *et al.*, Appellants, v. MARIA PAPPAS, Cook County Treasurer and *ex-officio* County Collector of Cook County, Appellee.

*Opinion filed December 1, 2000.*

BILANDIC, J., took no part.

Jeffrey S. Blumenthal and Rodney C. Slutzky, of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

This litigation challenges a rule promulgated by the Cook County collector regarding the acceptance of penalty bids at the County's annual tax sale. On cross-motions for summary judgment, the circuit court of Cook County found the rule invalid and permanently enjoined its enforcement. The appellate court reversed. 309 Ill. App. 3d 779. We granted leave to appeal (177 Ill. 2d R. 315) and now affirm the appellate court's judgment.

The procedures governing tax sales are set forth in article 21, division 4, of the Property Tax Code (35 ILCS 200/21—190 *et seq.* (West 1996)). That statute provides that after judgment has been rendered against property for nonpayment of taxes and the requisite notice has been issued, the county collector is to offer the property for sale at a public sale. 35 ILCS 200/21—190 (West 1996). Once the property is sold, the county clerk issues a certificate of purchase to the buyer, countersigned by the collector, describing the property; indicating the date of sale and the amount of taxes, special assessments, interest and costs for which the property was sold; and confirming that payment of the sale price has been made. 35 ILCS 200/21—250 (West 1996).

Issuance to a tax buyer of a certificate of purchase for delinquent taxes does not affect the delinquent property owner's legal or equitable title to the property. See

*In re Petition of Conrad Gacki Profit Sharing Fund for Tax Deeds*, 261 Ill. App. 3d 982, 984 (1994). The owner or person interested in the property, other than an undisclosed beneficiary of an Illinois land trust, has the right to redeem the property from the sale. 35 ILCS 200/21—345 (West 1996); Ill. Const. 1970, art. IX, § 8. If the redemption period expires and the property has not been redeemed, the tax buyer or the buyer's assignee may obtain a tax deed for the property. 35 ILCS 200/22—30, 22—40 (West 1996). If the property is redeemed within the statutory period, the certificate of purchase gives the tax buyer or the buyer's assignee the right to receive the money paid to redeem the property. 31B Ill. L. & Prac. *Revenue & Taxes* § 85, at 320 (West 1997).

To redeem property sold at a tax sale, the owner or person interested in the property must pay the amount of the certificate of purchase plus a penalty, computed through the date of redemption as a percentage of the certificate amount. 35 ILCS 200/21—355 (West 1996). The percentage rate used in computing the penalty is determined by the bidders at the tax sale. When potential buyers compete against each other at the sale, the penalty percentage rate is, in fact, the only thing subject to bid.[1] Each bidder is required to specify a rate for computing the penalty, up to a maximum of 18%. The bidder offering the least penalty percentage rate, *i.e.*, the bidder who is willing to allow the owner to redeem his property for the smallest penalty, is allowed to purchase the property. 35 ILCS 200/21—215 (West 1996).

The controversy before us today arose when bidders at Cook County's 1996 annual tax sale, held in January of 1998, began making multiple, simultaneous, identical bids for the maximum statutory penalty percentage rate

---

[1] All potential buyers must be willing to pay the full amount of the taxes due, plus any special assessments, interest and costs. See 35 ILCS 200/21—180, 21—240 (West 1996).

of 18%. When this occurred, the collector's office initially responded by selecting a winning bid at random from among the identical bidders. The result was that during the first six days of the sale, approximately 95% of the properties sold at the maximum penalty percentage rate. Only about 5% of the properties were disposed of through normal competitive bidding.

Believing that the competition contemplated by the statutory tax sale scheme was being impaired and concerned that its random bid selection policy did not comport with the law, the collector's office instituted a new policy. That policy was explained to bidders as follows:

> "As you are all aware the statute provides that during this sale the property in question shall be awarded to the bidder who bids the least penalty percentage. In accordance with the statute, the following procedure will be implemented:
>
>> Only the person offering to pay the amount due on each property for the *least* penalty percentage will be the successful purchaser of that property.
>>
>> No bid shall exceed 18% and if multiple simultaneous bids of the same percentage are made, no one of these bids being the least, none will be accepted.
>>
>> If multiple simultaneous bids are received at the same percentage and if no bid of a lower percentage is received, the property will be forfeited."[2] (Emphasis in original.)

Upon implementation of this policy, competitive bidding returned to the sale. Of properties which attracted

---

[2]As used in this context, forfeiture is a term of art. Under the Property Tax Code, property which goes unsold at a tax sale for want of bidders "shall be forfeited to the State of Illinois." 35 ILCS 200/21—225 (West 1996). Title to the parcel does not change hands, however, and the state does not acquire an interest in the property. For tax collection purposes, forfeiture means simply that other collection methods will be employed to collect the delinquent taxes. See 35 ILCS 200/21—225, 21—370, 21—375, 21—440 (West 1996).

bids, only a small percentage sold at the maximum statutory rate. The rates bid fell as low as zero percent, and there was apparently a discernible minimum bid for each parcel sold. While the new policy was in effect, only four properties of the thousands offered for sale were forfeited because of multiple, simultaneous, identical bids.

The plaintiffs in this case were all bidders on the four forfeited properties. They brought suit in the circuit court of Cook County to enjoin enforcement of the collector's new policy. While the matter was pending and while the 1996 annual tax sale was still underway, plaintiffs succeeded in obtaining a temporary restraining order to block the collector from declaring as forfeited property that which had received only multiple, simultaneous, identical bids. Immediately thereafter, bidders at the sale resumed the practice of making multiple, simultaneous bids at the maximum statutory penalty rate of 18%.

The collector brought an interlocutory appeal to challenge the temporary restraining order. The appellate court affirmed without a written opinion. After the matter returned to the circuit court, the parties filed cross-motions for summary judgment. The circuit court granted the motion filed by plaintiffs, denied the motion filed by the collector, and permanently enjoined enforcement of the new policy.

In ruling as it did, the circuit court took the position that the new policy was not authorized by statute and that the collector had no power to dispose of property at tax sales except as specifically provided by law. The appellate court disagreed. 309 Ill. App. 3d 779. It ruled that the collector's power to conduct tax sales necessarily carried with it the power to set reasonable ground rules for the auction, provided that such rules are consistent with the statutory scheme erected by the legislature.

The appellate court was correct in rejecting the

circuit court's narrow view of the collector's authority. Contrary to the position taken by the circuit court, the collector is not confined to those actions specifically detailed in the Property Tax Code. When the General Assembly conferred on county collectors the power to conduct tax sales, it also conferred, by implication, the authority to do all that is reasonably necessary to execute that power. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 427 (1988).

County collectors are permitted to "exercise discretion to accomplish in detail what is legislatively authorized in general terms." *Lake County Board of Review*, 119 Ill. 2d at 428.

The specific policy adopted by the collector in this case was fully consistent with the general statutory scheme established by the legislature. As previously indicated, section 21—215 of the Property Tax Code provides that "[t]he person at the sale offering to pay the amount due on each property for the least penalty percentage shall be the purchaser of that property." 35 ILCS 200/21—215 (West 1996). Under this statute, there is no uncertainty about who will be allowed to buy property offered at a tax sale. The property may only be purchased by the bidder who offers to pay the amount due for the least penalty percentage.

The problem faced by the collector in this case was what to do when there is no discernible lowest bid. As the collector's new policy correctly recognized, when all of the bids are for precisely the same penalty percentage, none of the bidders can be said to have offered "to pay the amount due *** for the least percentage" as specified in section 21—215. There being no lowest bidder, none of the bidders meet the statute's qualifications to purchase the property.

The Property Tax Code contains no express provisions for dealing with this situation. In the collector's

view, however, sales which failed for lack of a qualified low bidder were analogous to sales which failed because there were no bidders at all. In either case, the result is the same. The property offered at sale cannot be sold because there is no proper bidder to sell it to.

Where property is "not sold for want of bidders," the Property Tax Code provides that it is normally deemed forfeited and subject to other means of disposition. 35 ILCS 200/21—225 (West 1996). The policy challenged here merely follows that procedure. When a property offered for sale fails to attract a qualified low bidder, the property is treated in precisely the same way as it would be treated if it did not attract any bidders. It is forfeited.

Plaintiffs take serious exception to this interpretation and application of the statute. In addressing plaintiffs' concerns, we begin by observing that the way in which the collector construes and applies the law is not binding on our court. *Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 148 (1997). Nevertheless, we afford considerable deference to the interpretation placed on a statute by the agency charged with its administration (*King v. Industrial Comm'n*, 189 Ill. 2d 167, 171 (2000)), and we agree with the appellate court that the collector's interpretation of the Property Tax Code is sound.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 451 (1997). The language used in the statute is normally the best indicator of what the legislature intended (*In re Application of the County Collector of Du Page County for Delinquent Taxes for the Year 1992*, 181 Ill. 2d 237, 244 (1998)), but where the language used leaves uncertainty as to how it should be interpreted in a particular context, the court can consider the purpose behind the law and the evils the law was designed to remedy (*Wagner v. City of Chicago*, 166 Ill. 2d 144, 149 (1995)).

The public sale provisions of the Property Tax Code were designed to foster competition in bidding (see *Boynton v. People ex rel. Kochersperger*, 166 Ill. 64, 69 (1897)) in order to enable owners to exercise their right of redemption, as guaranteed by our constitution (see Ill. Const. 1970, art. IX, § 8), at the lowest possible cost. Where bidders at the sale all make simultaneous, identical bids for the same parcels at the maximum penalty percentage, as happened here, that goal is subverted. If the collector were required to accept such bids, tax purchasers would have the power to act in concert to force owners to redeem at rates prearranged by the potential purchasers. The likely outcome, and the one reflected by the collector's actual experience here, is that potential purchasers would be able to set the rates at the statutory maximum. Even if the maximum rates were not reached in every case, the loss of competition would mean that whatever rates the tax purchasers decided to bid would tend to be higher than otherwise possible. In either instance, owners would be deprived of the opportunity to redeem at the lowest possible rate. The reason for the law would be thwarted.

The solution formulated by the collector adheres to the principle that statutes should not be construed in a way that would defeat the statute's purpose or yield an absurd or unjust result. See *People v. Latona*, 184 Ill. 2d 260, 269 (1998). Contrary to an argument advanced by plaintiffs, the new policy does not give the collector unbridled authority to reject bids she regards as excessive. Invocation of the policy is not determined by the amount of the penalty percentage offered at the tax sale. What brings the rule into play is existence of multiple bids all made at the same time and for the same penalty percentage rate. The exact amount of the penalty percentage is immaterial. If there are multiple bids for a property, but all the bids are made at the same time and

for the same amount, the new policy applies, whether the rate bid is high or low.

There is likewise no merit to plaintiffs' argument that if the new rule is upheld, the collector will be able to reject any bid even if it is the only one received. By its terms, the new rule applies only where there are multiple bids. If there is only one bid, that bid will necessarily be the lowest one, and the collector will have no discretion in how to proceed. Under the express terms of the Property Tax Code, the person making the lowest bid "shall be the purchaser of that property." 35 ILCS 200/21—215 (West 1996).

In sum, we find no basis for disturbing the appellate court's judgement. The party seeking an injunction has the burden of proving the necessity therefor. *Board of Education of Peoria School District No. 150 v. Peoria Education Ass'n*, 29 Ill. App. 3d 411, 413 (1975). The plaintiffs in this case have not met that burden. Injunctive relief will not be granted against public officials with respect to their official acts unless the acts complained of are outside their authority or unlawful. See *Chicago School Reform Board of Trustees v. Martin*, 309 Ill. App. 3d 924, 940-41 (1999); *Illinois Federation of Teachers v. Board of Trustees*, 191 Ill. App. 3d 769, 773 (1989). As we have just discussed, those circumstances are not present here.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.