# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Demos v. Pappas*, 2011 IL App (1st) 100829

---

| | |
|---|---|
| Appellate Court Caption | HARRY DEMOS, GUS DEMOS and JAMES DEMOS, Petitioners-Appellees, v. MARIA PAPPAS, County Treasurer of Cook County, Illinois, as Trustee of the Indemnity Fund Created by Section 21-295 of the Property Tax Code (35 ILCS 200/21-295), Respondent-Appellant (Bank of America, Illinois, Citation Respondent-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-10-0829 |
| Filed | August 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order imposing postjudgment interest of 9% pursuant to section 2-1303 of the Code of Civil Procedure on petitioners' judgment against the indemnity fund established by section 21-295 of the Property Tax Code was reversed on the ground that the 6% interest provision of section 2-1303 applied to the judgment. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-COIN-11; the Hon. Edward P. O'Brien, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Marilyn Fusco Schlesinger and Tatia Gibbons, Assistant State's Attorneys, of counsel), for appellant. |
| --- | --- |
| | Jeffrey Blumenthal, of Chicago, for appellees. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. |
| | Presiding Justice Hall and Justice Lampkin concurred in the judgment and opinion. |

# OPINION

¶ 1 Respondent, Maria Pappas, county treasurer of Cook County, Illinois (Treasurer), as trustee of the indemnity fund created by section 21-295 of the Property Tax Code (35 ILCS 200/21-295 (West 2008)), appeals from an order imposing 9% interest on an indemnity-fund judgment, pursuant to the postjudgment interest provision of the Code of Civil Procedure (hereinafter the Interest Act) (735 ILCS 5/2-1303 (West 2008)). The Treasurer argues that the 6% interest provision of the Interest Act should apply to such a judgment. We agree and therefore reverse the order of the circuit court.

¶ 2                                    I. Background

¶ 3 Petitioners, Harry Demos, Gus Demos and James Demos, filed a "Petition for Indemnity Fund Relief" against the Treasurer on May 15, 2008, seeking compensation for the loss of their property, which had been transferred from their ownership by tax deed. Petitioners alleged their property had been sold for the nonpayment of 1999 real estate taxes. After the period of redemption, a tax deed was issued by an order of the circuit court in 2004. Petitioners claimed they paid the 1999 taxes on the property by mail, did not receive notice of the tax sale proceedings, and did not learn of the tax sale until after the tax deed had been recorded in 2004. Petitioners failed to vacate the tax deed, and they further alleged that they were not negligent or at fault for the loss of their property by tax sale and were entitled to relief from the indemnity fund.

¶ 4 On September 19, 2009, an agreed judgment in the amount of $497,500 was entered in favor of petitioners and against the Treasurer, "solely in her capacity as Trustee of the Indemnity Fund." The Treasurer, therefore, issued petitioners a check dated November 4, 2009. That check was in the amount of $501,425.48, including $3,925.48 of interest, paid at a rate of 6% per annum from September 16, 2009 to November 4, 2009.

¶ 5 On November 18, 2009, petitioners served Bank of America with a "Citation to Discover

-2-

Assets to a Third Party," asserting they were owed additional interest on their judgment, and they requested Bank of America to preserve funds held on behalf of the Treasurer. The Treasurer appeared on the citation and made an objection.

¶ 6 The issue before the trial court in the citation proceeding was whether the original judgment, which was entered in favor of the petitioners and against the Treasurer as trustee of the indemnity fund, was subject to a postjudgment interest rate of 6% or 9% under the Interest Act. That statutory provision provides, in relevant part:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, or any other governmental entity." 735 ILCS 5/2-1303 (West 2008).

¶ 7 The Treasurer and petitioners filed cross-motions for summary judgment as to the issue of whether additional interest was owed. The Treasurer argued that petitioners were entitled to 6% postjudgment interest because the Treasurer was a "governmental entity." Petitioners, on the other hand, argued they were entitled to 9% interest because the Treasurer, as a trustee of the indemnity fund, does not perform a governmental function and the indemnity fund is, therefore, "private" because it is made up of fees paid by tax deed purchasers and distributed to a "finite group of people who have lost their property through a tax sale." The trial court granted petitioners' motion, found that petitioners were entitled to 9% interest, and ordered Bank of America to tender the additional interest owed to petitioners. The Treasurer timely appealed.

¶ 8                                    II. Analysis

¶ 9 On appeal, the Treasurer reasserts the arguments made in the trial court with respect to the proper amount of interest it owed to petitioners. Petitioners have not filed an appellees' brief in this court, and we previously ordered that this appeal would be decided on the Treasurer's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (where the record in the case is neither lengthy nor complicated and the issue is one of law, an appeal may be decided properly without the aid of an appellee's brief).

¶ 10                               A. Standard of Review

¶ 11 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). By filing cross-motions for summary judgment, the parties "agree that only a question of law is involved and invite the court to decide the issues based on the record." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). An order granting a motion for summary judgment is subject to a *de novo* standard of review. *Id.*

¶ 12 In construing statutes, our primary objective is to ascertain and give effect to the legislature's intent. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 106 (2000).

"The most reliable indicator of the legislature's intent is the language of the statute, given its plain, ordinary, and popularly understood meaning." *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). "[W]here an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). "[W]here the language used leaves uncertainty as to how it should be interpreted in a particular context, the court can consider the purpose behind the law and the evils the law was designed to remedy." *Phoenix Bond*, 194 Ill. 2d at 106. Furthermore, the proper construction of statutes presents a question of law, which we also review *de novo*. See *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 35 (2009).

¶ 13                                B. Statutory Framework

¶ 14    The determination of the issue on appeal first requires a review of property tax law and, in particular, certain statutory provisions relating to procedures for the enforcement of property taxes which are found in the Property Tax Code. 35 ILCS 200/21-5 *et seq*. (West 2008).

¶ 15                                1. Property Tax Code

¶ 16    "[P]roperty taxes are a principal source of revenue for local governments." *First National Bank & Trust Co. of Evanston v. Rosewell*, 93 Ill. 2d 388, 394 (1982). Under article IX, section 6, of the Constitution, property taxes are to be levied on all property, except for certain exempted property. Ill. Const. 1970, art. IX, § 6. Thus, the Constitution "guarantees every real property owner in this State that the burdens of real property taxation will be evenly distributed among all owners of such property." *McKenzie v. Johnson*, 98 Ill. 2d 87, 93 (1983). A lien attaches to property in the amount of taxes, interests and costs that is superior to all other liens and exists until the taxes are paid or until the property is sold under the Property Tax Code. The county collector may offer property for public sale when a judgment has been rendered against the property for the nonpayment of real estate taxes. 35 ILCS 200/21-190 (West 2008). The buyer of property at such a sale does not receive title to the property but, instead, receives a "certificate of purchase." 35 ILCS 200/21-250 (West 2008). The issuance of a certificate of purchase "does not affect the delinquent property owner's legal or equitable title to the property." *Phoenix Bond*, 194 Ill. 2d at 101. The property owner has the right to redeem the property, upon the payment of the tax arrearage and costs, until such time as the redemption period expires. 35 ILCS 200/21-345 to 21-355 (West 2008). If the property is not redeemed, the tax purchaser may file a petition in the circuit court asking the court to enter an order directing the county clerk to issue a tax deed to the property. 35 ILCS 200/22-30 (West 2008).

¶ 17    The overall purpose and goal of the enforcement provisions of the Property Tax Code is to place "property in the hands of those who are both willing and able to pay their taxes." *Garcia v. Rosewell*, 43 Ill. App. 3d 512, 516 (1976). The procedures relating to "certificates of purchase and for issuance of tax deeds are legislative means to encourage buyers at tax sales, increase collection of tax revenue by taxing authorities and free land to once again

enter the stream of commerce and bear its aliquot share of the tax burden." *Id.* (quoting *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill. App. 2d 185, 189 (1970)). See also *In re Application of the County Collector*, 217 Ill. 2d 1, 17-18 (2005) ("If tax purchasers do not participate in tax sales, then delinquent taxpayers lose the incentive to pay their real estate taxes and tax revenues fall.").

¶ 18                                    2. Indemnity Fund

¶ 19    A tax deed order is subject to direct and collateral attack. 35 ILCS 200/22-45 (West 2008). However, where the tax deed cannot be set aside, the interest in enforcing tax assessments through the forfeiture process does, in some instances, create harsh results causing some persons to lose their property through no fault of their own. See *Malmoff v. Kerr*, 227 Ill. 2d 118, 123 (2007); *Hedrick v. Bathon*, 319 Ill. App. 3d 599, 604 (2001). For this reason, the legislature created the indemnity fund "to indemnify eligible parties for losses sustained from failure to redeem their property." *In re Application of the County Treasurer of Cook County, Illinois, for Judgement & Sale of Real Estate for General Taxes for the Year 1980*, 185 Ill. App. 3d 701, 704 (1989).

¶ 20    The indemnity fund consists of fees and other payments collected by the county collector from those persons who purchase property at tax sales. 35 ILCS 200/21-295(a), (a-5) (West 2008). The county collector transfers these payments to the treasurer of the county where the sold property is located. 35 ILCS 200/21-295(b) (West 2008). The county treasurer "holds and administers the fund, acting solely as trustee of the fund." *Carswell v. Rosewell*, 150 Ill. App. 3d 168, 170 (1986). The indemnity fund is "held to satisfy judgments obtained against the County Treasurer, as trustee of the fund." 35 ILCS 200/2-295(b) (West 2008). The county board is charged with determining the amount of money to be maintained in the indemnity fund in that county. 35 ILCS 200/21-300(a) (West 2008). "Any moneys accumulated by the County Treasurer in excess of the amount so established, as trustee of the fund, shall be paid by him or her annually to the general fund of the County." *Id.* Counties that have a Tort Liability Fund and provide by ordinance that indemnity fund judgments will be paid out of the Tort Liability Fund may deposit the monies collected for indemnity fund purposes in the general funds of that county. 35 ILCS 200/21-300(b) (West 2008).

¶ 21    Persons whose property has been sold for taxes and who cannot set aside the tax deed may seek to recover the fair cash value of their property on the day a tax deed issues, less any mortgage or liens. 35 ILCS 200/21-305 (West 2008). A party seeking indemnity must file a petition with the court and "shall name the County Treasurer, as Trustee of the indemnity fund, as defendant to the petition, and shall ask that judgment be entered against the County Treasurer, as Trustee, in the amount of the indemnity sought." 35 ILCS 200/21-305(b)(1) (West 2008). "No payment shall be made from the fund, except upon a judgment of the court ***." 35 ILCS 200/21-295(b) (West 2008). The county treasurer satisfies indemnity fund judgments in chronological order and only when there are sufficient funds to pay the judgment in full. *Carswell*, 150 Ill. App. 3d at 170.

¶ 22    Section 21-305 provides that the Civil Practice Act applies to indemnity fund proceedings. 35 ILCS 200/21-305(b)(1) (West 2008). Therefore, in *Carswell*, this court held

that the Interest Act applies to judgments entered pursuant to the indemnity fund statute. *Carswell*, 150 Ill. App. 3d at 172. *Carswell* did not address or determine the issue of the appropriate rate of postjudgment interest under the Interest Act.

¶ 23                            C. The Nature of the Treasurer's Office

¶ 24    Under the terms of the Interest Act, the 6% rate applies where the "judgment debtor" is a "governmental entity." 735 ILCS 5/2-1303 (West 2008). The judgment debtor, in this case, is Maria Pappas, county treasurer of Cook County, Illinois, as trustee of the indemnity fund, created by section 21-295 of the Property Tax Code. We must, therefore, decide if this judgment debtor is a governmental entity.

¶ 25    The Interest Act does not include a definition of a governmental entity. We recently defined the term in *Barry v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 357 Ill. App. 3d 749, 779 (2005). "[I]n order to qualify as a governmental entity [under the Interest Act], an entity must perform a governmental function." *Id.* A governmental function is " '[a] government agency's conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law and that *is carried out for the benefit of the general public*.' " (Emphasis in original.) *Id.* (quoting Black's Law Dictionary 704 (7th ed. 1999)). Thus, the more specific question to be determined is whether the Treasurer, as trustee of the indemnity fund, carries out duties authorized by the constitution, statute, or other law for the benefit of the general public.

¶ 26    Initially, we will examine the functions and duties of a county treasurer. The Illinois Constitution provides that a county shall elect a treasurer who, as a county officer, "shall have those duties, powers and functions provided by law and those provided by county ordinance." Ill. Const. 1970, art. VII, § 4(c), (d). Division 3-11 of the Counties Code sets forth the duties, powers and functions of a county treasurer in counties with a population over 150,000. 55 ILCS 5/3-11001 *et seq.* (West 2008). This act provides that a county treasurer "shall receive and safely keep the revenues and other public moneys of the county, and all money and funds authorized by law to be paid to him, and disburse the same pursuant to law." 55 ILCS 5/3-10005 (West 2008). The Counties Code applies to a county treasurer "when acting as such or in any other official capacity incident to his incumbency of the office of county treasurer." 55 ILCS 5/3-11001 (West 2008). The Counties Code sets forth depositing and record keeping requirements for all "county moneys," which is defined to include "all moneys to whomsoever belonging, received by or in possession or control of the incumbent of the office of county treasurer when acting as such or in any other official capacity incident to his incumbency of the office of county treasurer." *Id.*

¶ 27    The county treasurer is prohibited from retaining fees, commissions or compensation, except for the salary and compensation set by law for any services acting as county treasurer, or "any other official capacity incident to his incumbency of that office." 55 ILCS 5/3-11017 (West 2008). Nor can the county treasurer personally profit from any county moneys. 55 ILCS 5/3-11019 (West 2008). The expenses incurred by a county treasurer in the defense of suits brought "against him in any official capacity shall be paid out of the county treasury." 55 ILCS 5/3-11016 (West 2008).

¶ 28 Generally, the Treasurer must obtain an order from the county board to make payments from the county treasury. 55 ILCS 5/3-10014 (West 2008). Payments may be made by voucher from certain funds, including "[t]rust funds for such purposes as may be provided for by law." 55 ILCS 5/3-10005.3(d) (West 2008). Thus, monies in trust funds may be disbursed without waiting for a county board meeting and county board order, but the use of the vouchers allows oversight and control of the disbursement. See generally 1973 Ill. Att'y Gen. Op. 22.

¶ 29 Under the Constitution, the Treasurer is to perform all duties mandated by state law. See *Harlan v. Sweet*, 139 Ill. 2d 390, 398 (1990) ("[A] function of the office of [T]reasurer is to perform the duties imposed upon that office by the legislature."). Our examination of the Counties Code reveals the public nature of the office and duties of the Treasurer. The Treasurer, in whatever capacity, is charged by the Counties Code to receive, maintain and safeguard all funds entrusted to her by state law, including special funds such as the indemnity fund, "to whomsoever belonging." 55 ILCS 5/3-11001 (West 2008). Although a county treasurer performs "some functions similar to trustees," a county treasurer remains a public official when performing functions incident to the office. See *S.A.S. Co. v. Kucharski*, 53 Ill. 2d 139, 143 (1972).

¶ 30 It is equally clear that the Treasurer, as trustee of the indemnity fund, is performing functions authorized by law and for the public. The legislature has imposed upon the Treasurer the duty to act and function as trustee of the indemnity fund. As discussed, the indemnity fund is part of the overall scheme in the enforcement and collection of property tax revenues and serves a significant public purpose. The Treasurer, as trustee of the indemnity fund, as with all monies received by her, must maintain the integrity of those funds and disburse those funds in accord with the applicable statutory provisions. Because acting as a trustee is considered incidental to her office, the Treasurer is prohibited from gaining personal profit from or receiving additional compensation for her role as trustee. The Treasurer is the judgment debtor in this case because, by law, she must be named as the defendant in suits for relief under the indemnity fund. Under the Counties Code, the expenses for defending against such suits are paid from the county treasury and not from the indemnity fund. The Treasurer, as trustee of the indemnity fund, is a constitutional officer carrying out her public duties for the benefit of the public.

¶ 31 We, therefore, conclude that the Treasurer, as trustee of the indemnity fund, is a governmental entity and, as the treasurer is the judgment debtor in this case, we further find that the proper postjudgment rate on indemnity fund judgments is 6%.

¶ 32 Our holding serves the essential purpose for the distinction made by the Interest Act as to governmental entities. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007) ("A statute should be interpreted so as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity."). The Interest Act provides for a lower postjudgment interest for governmental entities which have limited means of generating revenues. See generally *Barry*, 357 Ill. App. 3d at 775 (discussing prejudgment interest). A 6% interest imposes a lesser burden on the limited resources of the indemnity fund. In turn, because judgments against the fund cannot be paid unless there are sufficient monies, our decision has benefits for those who have successfully obtained

indemnity fund judgments.

¶ 33                                D. The Retirement Fund and Taking Cases

¶ 34        In the trial court the petitioners argued that a line of cases relating to retirement funds for governmental employees, beginning with *Barry*, required a finding that the indemnity fund is a "private" entity and, therefore, a 9% rate applied. We do not agree.

¶ 35        In *Barry*, the Retirement Board of the Fireman's Annuity and Benefit Fund (Board) was ordered to pay plaintiffs' increased widows' annuity benefits with postjudgment interest of 9%. *Barry*, 357 Ill. App. 3d at 779. We concluded:

> "The fund was not created for the benefit of the general public, but for the benefit of firemen employed by the City of Chicago who are required by statute to contribute to that fund. As previously noted, the Board's primary statutory function is to administer a pension fund. In the context of the instant case, we find neither the Board nor the fund performed a governmental function. Accordingly, we find the Board and the fund do not qualify as 'governmental entit[ies]' under section 2-1303 of the Code of Civil Procedure." *Id*. at 779-80.

Accord *Long v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 681 (2009); *Coleman v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 380 (2009); *Bell v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758 (2010).

¶ 36        In *Barry*, we limited our discussion to the particular context of that case and found significant the fact that the Board's primary function was to administer a retirement fund, which was created for the "benefit of *** firemen, their widows, children and parents." (Internal quotation marks omitted.) *Barry*, 357 Ill. App. 3d at 773. In contrast, the Treasurer is a public official created by the Constitution and charged, by statute, with the maintenance of all county monies, including the monies of the indemnity fund. Acting as trustee of any special funds is part of the Treasurer's overall public role and duties to secure the integrity of monies entrusted to her. Our examination of the Counties Code and the nature and purpose of the indemnity fund demonstrated the public nature of the fund itself and the duties of the Treasurer as trustee of those funds. Additionally, we note that the amount to be held in the indemnity fund is determined by the county board, and any excess monies in the indemnity fund may revert to the county's general fund. The indemnity fund, consisting of fees collected from tax purchasers by the county collector, is available to indemnify any qualified person who has lost property due to a tax sale under the Property Tax Code and is an essential part of the Property Tax Code. The indemnity fund was created to strike a balance between the need to generate property taxes by returning delinquent property to the tax rolls and alleviate the harsh results to those who have lost their property.

¶ 37        Furthermore, the Counties Code declares that "county moneys" include all monies received by the county treasurer when acting as treasurer or other official capacity "to whomsoever belonging." 55 ILCS 5/3-11001 (West 2008). Certain monies held by a county treasurer, however, have been held to be "private property" under circumstances which are not analogous to our case. *Morton Grove Park District v. American National Bank & Trust*

*Co.*, 78 Ill. 2d 353 (1980).

¶ 38    In *Morton Grove Park District*, the supreme court considered whether the county treasurer's retention of interest earned on a condemnation award, deposited by the park district with the county treasurer pursuant to the Eminent Domain Act, violated the taking clause of the federal and state constitutions. *Morton Grove Park District*, 78 Ill. 2d at 357. The taking clause prohibits the taking of private property for public use without just compensation. *Id.* at 362. "The word 'property' as employed in the taking clause of the Federal and Illinois constitutions include[s] every interest anyone may have in any and everything which is the subject of ownership, together with the right to possess, use, enjoy, and dispose of the same." *Id.* An owner of a condemned property has a constitutional and statutory right to appeal an eminent domain judgment. *Id.* at 359. However, the award to the condemnee must be deposited with the county treasurer during the appeal and may not be withdrawn unless the appeal is abandoned. *Id.* The supreme court concluded that the award money stood "in the place" of the condemned property and, therefore, was private property subject to protection under the taking clause of both the state and federal constitutions. *Id.* at 362. The court found any interest earned on the award was incidental to the condemnee's ownership of the award. *Id.* at 362-63. The county treasurer had argued that the interest belonged to the county fund under the definition of "county moneys." The supreme court, in order to avoid an interpretation that was subject to a constitutional challenge, concluded: "we must construe 'to whomsoever belonging,' as contained in the definition of county monies in section 1, as referring to money other than that which constitutes private property." *Id.* at 364.

¶ 39    There is no constitutional issue under the taking clause raised here. The condemnation award in *Morton Grove Park District* was a liquidated amount held by the county treasurer for safekeeping for a particular person. The indemnity fund, in contrast, consists of monies held for future awards for unspecified persons and excesses in the indemnity fund may revert to the general fund of the county. The indemnity fund falls within the definition of county moneys and is not "private property" under *Morton Grove Park District*.

¶ 40                          III. Conclusion

¶ 41    For the foregoing reasons, we find that in this case the applicable postjudgment interest rate under the Interest Act was 6% per annum. We therefore reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

¶ 42    Reversed and remanded.