*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, of Lake County, Illinois, for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes and Special Assessment for the Year 2003 and Prior Years (A.P. Properties, Inc., Petitioner-Appellant, v. Ezra Chaim Properties, LLC, Respondent-Appellee).

Second District   No. 2—08—0755

Opinion filed August 27, 2009.

Thaddeus M. Bond, Jr., of Law Offices of Thaddeus M. Bond, Jr., & Associates, of Waukegan, for appellant.

Lawrence N. Stein, of Law Offices of Lawrence N. Stein, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

After petitioner, A.P. Properties, Inc. (A.P.), purchased the delinquent real estate taxes of a residential property located in Gurnee, the taxes were redeemed by respondent, Ezra Chaim Properties, LLC (Ezra). A.P. petitioned to expunge the redemption, and Ezra moved for summary judgment. The Lake County circuit court granted summary judgment in favor of Ezra, and A.P. appeals. We affirm.

## I. BACKGROUND

The residential property at issue was purchased by Shirley Dietrich in 1999. After Dietrich failed to pay the real estate taxes for

the year 2003, the taxes were purchased by A.P. at a tax sale on December 6, 2004. On April 10, 2007, A.P. petitioned for an order directing the issuance of a tax deed that would transfer title to the property if redemption were not made by August 7, 2007. On August 7, 2007, the last possible day to redeem, the delinquent taxes were redeemed by Ezra.

On August 28, 2007, A.P. filed a petition to expunge the redemption, stating that it did not "believe" that Ezra had an interest in the property, as defined by section 21—345 of the Property Tax Code (35 ILCS 200/21—345 (West 2006)). On October 26, 2007, Ezra filed a response to A.P.'s petition. According to Ezra, on August 6, 2007, Dietrich entered into a contract to sell the property to Ezra. On August 7, 2007, Ezra recorded a "Declaration of Interest" with the Lake County recorder, making its contract of record. Also on August 7, 2007, Dietrich executed and had notarized a deed conveying the property to Ezra. The deed was recorded with the Lake County recorder on August 9, 2007. Ezra redeemed the property from the tax sale on August 7, 2007. Because it entered into a contract with Dietrich before the expiration of the right of redemption, Ezra argued that it had the right to redeem the property from the tax sale.

The contract, the declaration of interest, and the deed were attached to the response. The terms of the contract were as follows. Ezra would pay Dietrich $10,000 upon execution and delivery of the deed; Ezra would pay $17,883.05 to redeem the property from the 2003 real estate taxes and to cover outstanding association fees; and Ezra would pay $65,000 upon Dietrich's tendering possession of the property to Ezra. The contract further stated that Dietrich would deliver possession to Ezra nine months from the date of execution of the contract. Dietrich acknowledged in the contract that Ezra was not granting her any right or option to repurchase the property in the future or any right of first refusal should Ezra choose to sell the property once Dietrich tendered possession and received payment.

On March 18, 2008, Ezra moved for summary judgment on A.P.'s petition to expunge the redemption. In support of its motion, Ezra set forth additional facts relating to its purchase of the property, which were derived in part from a February 13, 2008, deposition of Dietrich. According to Ezra, Dietrich was aware that the last date to redeem the property from the tax sale was August 7, 2007. Dietrich contacted A.P. to request an extension, which A.P. denied. As a result, Dietrich set up a meeting with Mitchell Rattner and Mariann Weiss, the principals of Ezra, at her home on August 6, 2007. Several of Dietrich's relatives were present at the meeting. Dietrich signed the contract prepared by Ezra for the sale of the property on August 6,

2007, and Dietrich's cousin witnessed the signing of the contract. Dietrich understood that she was selling the property to Ezra, and the contract expressly stated that she had no right to repurchase the property from Ezra. Ezra made an initial payment of $10,000 to Dietrich at Chase Bank on August 7, 2007. Dietrich also signed the deed that morning at Chase Bank. The deed was notarized by a Chase Bank employee who required proof of Dietrich's identity. Dietrich then accompanied Rattner and Weiss to the Lake County courthouse to observe Ezra's payment of the amount required to redeem the property from the tax sale. Dietrich was also aware that Ezra paid her delinquent homeowner's association dues for the property. Ezra recorded a declaration of interest on August 7, 2007, making its contract of record with the Lake County recorder. The deed from Dietrich to Ezra was recorded on August 9, 2007. At that time, Dietrich remained in the property and had signed a lease to move as required under the contract. Dietrich was aware that she would receive the balance of the money owed her by Ezra when she vacated the property. Dietrich was satisfied with the transaction.

In support of its motion for summary judgment, Ezra argued that it had an interest in the property because at the time it redeemed the property from the tax sale, it possessed an ownership interest by virtue of the contract and the deed. Ezra pointed out that it entered into the contract with Dietrich before the expiration of the right of redemption. In addition, Ezra argued that the Mortgage Rescue Fraud Act (765 ILCS 940/5 (West Supp. 2007)) was completely irrelevant[1] because: (1) as a tax buyer, A.P. had no standing under that statute; (2) the statute did not apply in that the transaction did not meet the requirements of a "distressed property conveyance"; and (3) Dietrich did not seek relief under that statute and was satisfied with the deal.

Dietrich's February 13, 2008, deposition, which was attached to Ezra's motion for summary judgment, was consistent with the facts set forth in Ezra's motion, except that in her deposition Dietrich could not remember where she signed the deed. Dietrich testified in the deposition that she believed that she was at the courthouse when she signed the deed, which was dated August 7, 2007. She signed it the day after she signed the contract on August 6, 2007. On August 7, 2007, she went to the courthouse with Rattner and Weiss to pay the taxes and to sign the deed. Rita Lucia Picicco was the notary listed on the deed. When asked if Picicco was at the courthouse on August 7,

---

[1]Ezra acknowledged that A.P. had filed no pleading asserting that the Mortgage Rescue Fraud Act negated Ezra's interest. However, in conducting discovery, A.P. had sought information that pertained to that statute.

2007, Dietrich responded, "I guess. I don't remember for sure. I mean, she had to be." Dietrich did not know why the deed was not recorded until August 9, 2007.

Dietrich's attorney, Brian Burak, then questioned Dietrich about the deed and what transpired on August 7, 2007. Dietrich testified that Rattner and Weiss picked her up and took her to the bank. When Burak asked if the notary who notarized the deed was present at the bank, Dietrich responded that she did not "remember if it was at the bank or at the courthouse." Dietrich continued that "[w]e had something notarized at the bank and something at the courthouse. I just don't remember which item."

Also attached to Ezra's motion was Rattner's deposition. In his deposition, Rattner testified that he and Weiss picked up Dietrich at her house on the morning of August 7, 2007, and they drove to Chase Bank. Rattner observed Dietrich sign the deed at the bank; he observed the notary at the bank ask for Dietrich's identification and make a copy of her driver's license; and he observed the notary notarize the deed. Then, they went to the courthouse and recorded the declaration of interest before redeeming the taxes. Rattner testified that he was present during Dietrich's deposition. When asked if he heard Dietrich say that she signed the deed at the courthouse, Rattner responded that he "heard her say that and [he] heard her correct herself"; Dietrich did not sign any documents while at the courthouse. Rattner explained that on August 7 they recorded the declaration of interest rather than the deed "most likely" because they did not "have the proper documents," such as the transfer tax declaration form.

On May 20, 2008, A.P. filed a response to Ezra's motion for summary judgment. In its response, A.P. argued that: (1) the testimony of Dietrich, Rattner, and Weiss was "wildly inconsistent" in that Rattner and Weiss insisted that the deed was signed at Chase Bank, whereas Dietrich testified that the deed may have been signed at the courthouse; (2) Burak led Dietrich to "change" her testimony about where the deed was signed; (3) Burak represented Rattner and Weiss in another case pending before the trial court; (4) there was confusion over why the deed was not recorded until August 9; (5) the court could conclude that the deed was signed *after* August 7; (6) based on the deposition testimony and the relevant documents in the case, the court could infer that Ezra did not obtain an interest in the property prior to the time of redemption; and (7) a genuine issue of material fact existed as to when, if ever, Ezra obtained an interest in the property.

In addition, A.P. argued in its response that Ezra failed to comply with the Mortgage Rescue Fraud Act in several ways. The Mortgage

Rescue Fraud Act prohibited the transfer of a distressed property if the buyer did not first ascertain the credit status of the current owner and pay consideration equal to at least 82% of the fair market value and A.P. maintained that Ezra did not ascertain Dietrich's credit status or pay 82% of the fair market value. A.P. further maintained that the Mortgage Rescue Fraud Act prohibited the transfer of a distressed property if the buyer accepted a deed from the owner during the time that the owner had a right to cancel the transaction. According to A.P., Dietrich had the right to cancel the transaction at any time before Ezra completed all of its obligations; namely, paying the remaining $65,000, due upon the transfer of possession on April 1, 2008. However, Dietrich did not receive the $65,000 by April 1, 2008. Instead, she received only $55,000 on April 15, 2008.

Attached to A.P.'s response was the deposition of Weiss. In her deposition, she testified that Dietrich did not have an opportunity to reacquire the property from Ezra; it was an outright purchase. In addition, Dietrich did not have the ability to cancel the contract for any reason. On August 7, 2007, Weiss, Rattner, and Dietrich went to Chase Bank to have the deed notarized. From there, they went to the courthouse to record a declaration of interest in the property. Weiss did not recall why they did not record the deed on August 7.

Also attached to A.P.'s response was a second deposition of Dietrich, dated May 5, 2008, in which Dietrich testified that Ezra paid her $55,000 as the balance of the purchase price of the property, rather than $65,000 as provided in the contract.

On June 3, 2008, Ezra filed a reply to A.P.'s response to its motion for summary judgment. To address A.P.'s claim that Dietrich did not remember where she signed the deed, Ezra argued that the place of execution was irrelevant and that Dietrich never disputed the fact that she signed the deed on August 7. Attached to the reply was an affidavit by Rita Lucia Picicco, who averred that she was a notary public employed at Chase Bank on August 7, 2007. In her affidavit, Picicco stated that at the bank on August 7 she was shown a photo identification of Dietrich; she observed Dietrich sign the deed on August 7; and she was the notary public who executed the notary portion of the deed on August 7. Ezra argued in its reply that the fact that the deed was not recorded until August 9 did not affect the validity of the redemption.

With respect to the Mortgage Rescue Fraud Act, Ezra maintained that this transaction did not qualify as a "distressed property conveyance," because Ezra never promised to convey an interest back to Dietrich and because Ezra never gave Dietrich an option to purchase the property at a later date. In response to A.P.'s argument that the

statute was applicable because Ezra did not pay Dietrich the full balance of $65,000 on April 1, 2008, Ezra attached to its reply an amendment to the contract. Ezra paid Dietrich $55,000 on April 15, 2008, and then, pursuant to the amendment, Ezra paid one full year's rent for her new home as a credit against the $65,000. According to Ezra, the rent was over $13,000, and Ezra paid certain other expenses on Dietrich's behalf. As a result, Dietrich received more than the $75,000 contract price and believed that she had been fully compensated; she had no complaint. Ezra further maintained that A.P. lacked standing under the Mortgage Rescue Fraud Act to challenge the transaction.

The court heard arguments on the summary judgment motion on June 17, 2008, and it rendered a decision on July 18, 2008. The court granted Ezra's motion for summary judgment, reasoning as follows. Ezra had presented credible evidence that: (1) Dietrich signed a contract for the property on August 6, 2007; (2) Dietrich signed a deed transferring interest in the property on August 7, 2007; (3) the contract and the deed made Ezra an interested party with the right of redemption; (4) the taxes were redeemed by Ezra on August 7, 2007, which was the last date of the redemption period; (5) though the deed was not recorded until August 9, 2007, this did not affect Ezra's right to redemption; (6) Ezra obtained an interest in the property on August 6, 2007, upon the signing of the contract, or at the latest on August 7, 2007, upon the signing of the deed; (7) the Mortgage Rescue Fraud Act did not apply because there was no provision in the contract for Dietrich to purchase the property at a later date; (8) the discrepancy in payment did not change the contract terms for the sale of the house; (9) even if there was an issue of fraud in the conveyance of the property, which there was not, A.P. did not have standing to rely on the Mortgage Rescue Fraud Act for relief; (10) the term "consumer" in that statute relates to the owner of a distressed property and not to a tax buyer, like A.P.; and (11) there were no issues of material fact that would preclude the entry of summary judgment in favor of Ezra.

A.P. timely appeals.

## II. ANALYSIS

The purpose of a summary judgment proceeding is not to try an issue of fact, but instead to determine whether one exists. *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 311 (2007). Summary judgment is therefore appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Mydlach*, 226 Ill. 2d at 311. When considering a motion for summary judgment, the court must

view the record in the light most favorable to the nonmoving party. *McNamee v. Sandore*, 373 Ill. App. 3d 636, 648 (2007). While the non-moving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment. *McNamee*, 373 Ill. App. 3d at 648. Because summary judgment is a drastic measure, it should be allowed only when the right of the moving party is clear and free from doubt. *Mydlach*, 226 Ill. 2d at 311. A trial court's grant of summary judgment is subject to *de novo* review. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007).

## A. Redeemable Interest

A.P. first argues that a genuine issue of material fact exists as to *when* Ezra obtained an interest in the property. In support of its position, A.P. argues that the testimony of Dietrich, Rattner, and Weiss was wildly inconsistent and that a trial may have revealed that the three of them lacked credibility regarding when the contract and the deed were executed. With respect to Dietrich in particular, A.P. contends that her testimony was unclear as to when and where the documents were executed and that it is reasonable to surmise that Dietrich's attorney led her to change her testimony about where the deed was signed. A.P. points out that Dietrich's attorney represented Rattner and Weiss in another case, thereby creating the potential for bias. In addition, A.P. contends that the court erred by accepting the notary public's affidavit, because A.P. was denied the right to challenge its reliability.

According to A.P., when considering the deposition testimony in conjunction with the relevant documents in this case, "it can be inferred that Ezra did not obtain an interest in the subject property prior to the time it redeemed on August 7, 2007." A.P. points out that the deed was not recorded until August 9, 2007, even though Dietrich, Rattner, and Weiss claim that it was executed on August 7, 2007, prior to their going to the courthouse to redeem the delinquent taxes. A.P. also questions why it was necessary to record a declaration of interest on August 7 if the contract and the deed had already been signed, as Ezra claims. A.P. concludes that summary judgment is precluded by the issue of whether the contract and the deed were executed prior to the expiration of the redemption period or whether they were backdated in an effort to deny A.P. its tax deed.

■ Both the Illinois Constitution and the Property Tax Code (35 ILCS 200/1—1 *et seq.* (West 2006)) contain provisions regarding the right to redeem property sold at a tax sale. *In re Application of the Cook County Treasurer*, 185 Ill. 2d 428, 432 (1998). The primary

purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes, not to assist tax petitioners in depriving the actual owners of their property. *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 777 (2004). A tax buyer's certificate of purchase for delinquent taxes has no effect on the delinquent property owner's legal or equitable title to the property. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 101-02 (2000). Under section 21—345 of the Property Tax Code, the owner or person interested in the property has the right to redeem the property from the sale. 35 ILCS 200/21—345 (West 2006); *Phoenix Bond & Indemnity Co.*, 194 Ill. 2d at 102. If the redemption period expires and the property has not been redeemed, the tax buyer may obtain a tax deed for the property. See 35 ILCS 200/22—30 (West 2006). A tax certificate holder's right to a deed is subservient to the owner or interested person's right to redeem. *In re Application of County Treasurer & County Collector*, 294 Ill. App. 3d 557, 558 (1998). " 'Redemptions are looked upon with favor, and, unless injury results to the purchaser at the sale, a liberal construction will be given to redemption laws.' " *Application of County Treasurer*, 294 Ill. App. 3d at 559, quoting *In re Application of Du Page County Collector*, 98 Ill. App. 3d 950, 952 (1981); see also *In re Cook County Treasurer*, 185 Ill. 2d at 432 (the law favors redemptions, and the redemption statute will be liberally construed unless injury to the tax purchaser results).

■ Section 21—345, which governs the right to redemption, provides:

> "(a) Property sold under this Code may be redeemed only by those persons having a right of redemption as defined in this Section and only in accordance with this Code.
>
> A right to redeem property from any sale under this Code shall exist in any owner or person interested in that property, other than an undisclosed beneficiary of an Illinois land trust, whether or not the interest in the property sold is recorded or filed. *Any redemption shall be presumed* to have been made by or on behalf of the owners and persons interested in the property and shall inure to the benefit of the persons having the legal or equitable title to the property redeemed, subject to the right of the person making the redemption to be reimbursed by the persons benefited. *No redemption shall be held invalid by reason of the failure of the person redeeming to have recorded or filed the document evidencing an interest in the property prior to redemption,* other than an undisclosed beneficiary of an Illinois land trust." (Emphases added.) 35 ILCS 200/21—345 (West 2006).

Section 21—345 creates a presumption that any redemption has been made by or on behalf of the owners and persons interested in the

property. *In re Application of the County Treasurer & ex officio County Collector of McHenry County*, 301 Ill. App. 3d 672, 676 (1998). A party asserting a right to redeem under section 21—345 must have some interest, however incomplete or undefined, in the property, but an interest nonetheless. *In re Cook County Treasurer*, 185 Ill. 2d at 433.

At the outset, we note that A.P. is not contesting that the contract and deed create a redeemable interest in the property. Rather, A.P.'s argument is focused on *when* Ezra obtained an interest in the property. It is undisputed that the redemption period expired on August 7, 2007. As previously stated, A.P. frames the issue as whether the contract and the deed were executed prior to the expiration of the redemption period or whether they were backdated in an effort to deny A.P. its tax deed. For the following reasons, we find no genuine issue of material fact as to when Ezra obtained an interest in the property.

First, the contract for the sale of the property was signed by Dietrich on August 6, 2007. Dietrich testified in her deposition that the contract was signed at her house, in the presence of her relatives, and that her cousin witnessed the signing. Consistent with her testimony, the contract bears her cousin's signature. With respect to the contract, A.P. has offered no evidence that conflicts with the August 6 signing of the contract.

Second, the deed is dated August 7, the last possible day of redemption. Rattner and Weiss both testified in their depositions that they went with Dietrich to Chase Bank on August 7 to have the deed notarized *before* going to the courthouse and redeeming the taxes. Rattner testified that at the bank he observed Dietrich sign the deed and Picicco notarize the deed. Dietrich testified that she went with Rattner and Weiss to the bank and to the courthouse. While A.P. is correct that Dietrich was unclear whether she signed the deed at the bank or at the courthouse, we agree with Ezra that the validity of the deed is not affected by where it was signed. In other words, where the deed was signed does not affect the legal issue of when Ezra obtained an interest in the property. See *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 178 (1995) (an issue of fact is not material, even if disputed, unless it has legal probative force as to the controlling issue); see also *Costello v. Illinois Farmers Insurance Co.*, 263 Ill. App. 3d 1052, 1059 (1993) (the disputed issues of fact must be material to the essential elements of the defense in order to defeat a motion for summary judgment). Again, the deed was signed on August 7, which was the last possible day to redeem the taxes. Dietrich was unclear only on the issue of where the deed was executed; she was not unclear on what date it was signed, August 7. Therefore, A.P.'s claim

that Dietrich was unclear as to when and where the documents were executed mischaracterizes the record.

In addition, there is nothing in the record to support A.P.'s assertion that Burak led Dietrich to "change" her testimony or was biased in favor of Rattner and Weiss. When questioned by Burak, Dietrich testified that she could not remember whether the deed was notarized at the bank, because they "had something notarized at the bank and something at the courthouse"; she could not remember "which item." Dietrich was no more sure of where the deed was signed when questioned by her counsel than she was when questioned by A.P.'s counsel. See *Pekin Insurance Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003) ("genuine" issue of material fact means there is evidence to support the position of the nonmoving party).

Third, Ezra submitted the affidavit of Picicco, who averred that she worked at the bank on August 7, 2007; that she observed Dietrich sign the deed at the bank on August 7; and that she executed the notary portion of the deed on August 7. At the hearing on Ezra's motion for summary judgment, A.P. objected to the submission of the affidavit, on the basis that it was improper to attach it to a reply brief. When the court inquired whether A.P. was asking for additional investigation regarding the affidavit, A.P. responded that it wanted to put Picicco on the witness stand for cross-examination. The court then asked if A.P. wanted "to do that prior to any ruling on the summary judgment [motion]," to which A.P. replied that it was not necessary. Instead, A.P.'s position was that the reliability and credibility of the affidavit was an issue of material fact precluding summary judgment. Thus, the affidavit was uncontradicted and the record belies A.P.'s claim that it was not allowed to challenge the affidavit's reliability. See *Schultz v. American National Bank & Trust Co.*, 40 Ill. App. 3d 800, 806 (1976) (where properly alleged facts in affidavits in support of a motion for summary judgment are not contradicted by counteraffidavits, the facts so averred must be taken as true).

Last, the fact that the deed was executed on August 7 but not recorded until August 9 does not create an issue of material fact regarding whether Ezra had an interest in the property before it redeemed the taxes. Section 21—345 states that "[n]o redemption shall be held invalid by reason of the failure of the person redeeming to have recorded or filed the document evidencing an interest in the property prior to redemption." 35 ILCS 200/21—345 (West 2006). The statute establishes that the holder of legal or equitable title to property has a right to redeem the property, even if the title is not recorded. *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 294 Ill. App. 3d 557, 558 (1998); see also *Franzen v.*

*Donichy*, 9 Ill. 2d 382, 387 (1956) (contract to convey property created a redeemable equitable interest in property). Rattner testified in his deposition that the deed was not recorded at the courthouse on August 7 because not all of the paperwork required for recording had been completed. Although not necessary, Ezra took the additional step of recording a declaration of interest regarding the property before redeeming the taxes on August 7. A.P.'s unsupported and general assertion that Dietrich, Rattner, and Weiss may have lacked credibility is not sufficient to raise a genuine issue of material fact. See *Myers v. Levy*, 348 Ill. App. 3d 906, 922 (2004) (a party opposing a motion for summary judgment may not rely on his pleadings alone to raise an issue of material fact to rebut uncontradicted facts introduced by the moving party).

In sum, A.P. has not shown a genuine issue of material fact as to when the contract and the deed were executed (August 6 and 7, respectively). The pleadings, depositions, and affidavit show that there is no genuine issue as to any material fact and that Ezra clearly had an interest in the property at the time of redemption.

## B. Mortgage Rescue Fraud Act

■ A.P.'s final argument is that the Mortgage Rescue Fraud Act applies to this case and that Ezra violated the statute in several ways. Specifically, A.P. argues that Ezra: failed to ascertain Dietrich's credit status; failed to pay consideration equal to at least 82% of the property's fair market value; improperly accepted the deed during the period that Dietrich had a right to cancel the deal; and failed to have the contract notarized. We agree with Ezra that the Mortgage Rescue Fraud Act does not apply to this case.

In interpreting a statute, our primary goal is to ascertain the intent of the legislature. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). The best evidence of legislative intent is the language used in the statute itself, which must be afforded its plain and ordinary meaning. *Land*, 202 Ill. 2d at 421. When the plain language of the statute is clear and unambiguous, as it is here, the legislative intent that is discernable from this language must prevail and resort to other tools of statutory construction is not necessary. *Land*, 202 Ill. 2d at 421-22. Statutory interpretation is an issue of law, subject to *de novo* review. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370 (2007).

The Mortgage Rescue Fraud Act became effective January 1, 2007. By its very terms, the statute does not apply to transactions where the purchaser does not offer to sell the property or convey an interest back to the owner. Rather, it applies only to transactions where the purchaser promises to convey an interest in fee back to the owner or

provides the owner an option to repurchase the property. The Act refers to such a transaction as a "distressed property conveyance," which is defined as follows:

> " 'Distressed property conveyance' means a transaction in which an owner of a distressed property transfers an interest in fee in the distressed property or in which the holder of all or some part of the beneficial interest in a trust holding title to a distressed property transfers that interest; the acquirer of the property allows the owner of the distressed property to occupy the property; *and the acquirer of the property or a person acting in participation with the acquirer of the property conveys or promises to convey an interest in fee back to the owner or gives the owner an option to purchase the property at a later date.*" (Emphasis added.) 765 ILCS 940/5 (West Supp. 2007).

In this case, it is undisputed that the contract did not provide Dietrich with the right or option to repurchase the property. In fact, the contract expressly stated:

> "Seller further acknowledges that purchaser is not granting seller any right or option to repurchase the property in the future nor a right of first refusal should purchaser choose to sell the property once seller has tendered posession [*sic*] and received all of the monies due her pursuant to paragraph 2."

Weiss offered consistent testimony in her deposition by stating that Dietrich did not have the opportunity to reacquire the property from Ezra; it was an outright purchase. Under the plain language of the statute, the transaction in this case does not satisfy the definition of a "distressed property conveyance." As a result, the Mortgage Rescue Fraud Act's remaining requirements relating to "distressed property conveyance contracts" do not apply. See 765 ILCS 940/25 (West 2008) ("Every distressed property conveyance contract must be *** witnessed and acknowledged by a notary public"); 765 ILCS 940/50(b)(2), (b)(6)(A) (West 2008) ("A distressed property purchaser, in the course of a distressed property conveyance, shall not *** fail to make a payment to the owner of the distressed property so that the owner of the distressed property has received consideration in an amount of at least 82% of the property's fair market value" and shall not "accept from the owner of the distressed property an execution of any instrument of conveyance of any interest in the distressed property").

A.P.'s argument that the statute applies is unconvincing. According to A.P., because Ezra had not yet paid Dietrich the full purchase price for the property on the date of redemption, Dietrich retained a right to reacquire her interest if the balance due to her were not paid. The reason that Ezra did not pay the full purchase price by August 7

was due to the express terms of the contract. The original contract terms in this case were as follows. Ezra would pay Dietrich $10,000 upon execution and delivery of the deed; Ezra would pay $17,883.05 to redeem the taxes and cover other outstanding fees; Ezra would pay $65,000 upon Dietrich's tendering possession of the property to Ezra; and Dietrich would deliver possession to Ezra nine months from the date of execution of the contract. Ezra paid Dietrich $55,000 and the contract was amended so that Ezra also paid one year's rent for her new home as a credit against the $65,000. Contrary to A.P.'s assertion, these contract terms do not somehow translate into an option to repurchase the property at a later date, especially when Dietrich acknowledged in the contract that Ezra was not granting her any right or option to repurchase the property in the future or any right of first refusal should Ezra choose to sell the property once Dietrich tendered possession and received payment.

Accordingly, the transaction in this case is not subject to the provisions of the Mortgage Rescue Fraud Act, and there can be no genuine issue as to whether Ezra violated that statute. The trial court's grant of summary judgment in favor of Ezra was proper.

## III. CONCLUSION

Accordingly, the judgment of the Lake County circuit court is affirmed.

Affirmed.

ZENOFF, P.J., and BURKE, J., concur.