In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1187

In re:

TODD LAMONT and CHRISTINA
LAMONT,

*Debtors-Appellees.*

Appeal of:

LYUBOMIR ALEXANDROV

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-CV-2481 — **Harry D. Leinenweber**, *Judge.*

ARGUED SEPTEMBER 19, 2013 — DECIDED JANUARY 7, 2014

Before MANION, KANNE, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge*. If an owner of real property in
Illinois does not timely pay his county property taxes, the
county may "sell" the property to a third party, often called a
tax purchaser. The tax purchaser does not receive title to the
property, but rather receives a "Certificate of Purchase" which
can be used to obtain title to the property if the delinquent

taxpayer does not redeem his property within about two years. At issue in this case is how the tax purchaser's interest is treated when the property owner enters bankruptcy during the redemption period. The bankruptcy court held that, when there is still time to redeem, the tax purchaser's interest is a secured claim that is treatable in bankruptcy and modifiable in a debtor's Chapter 13 plan. The district court agreed. The holder of the Certificate of Purchase, Lyubomir Alexandrov, appeals, objecting to the treatment of his interest as a claim and arguing that he should be permitted to obtain a tax deed to the debtors' home. We affirm.

## I. Factual Background

*Illinois Property Tax System*

Because this case concerns an interest created by Illinois' property tax code, we begin with a brief overview of the system. Illinois property taxes are due the year after the year in which they accrue, and a lien in favor of the county automatically arises at the beginning of the year in which the taxes accrue. *See* Jeffrey S. Blumenthal & David R. Gray, Jr., *Tax Bills and Payments; Tax Sales and Redemptions; Miscellaneous Collection and Enforcement Matters and A Guide to Tax Deed and Indemnity Fund Proceedings,* Chapters 10 & 11 *in* Real Estate Taxation § 10.3 (IICLE 2012) (hereinafter, "Real Estate Taxation"); 35 ILCS 200/21-75. If the taxes are paid, the county's lien is extinguished; if the taxes are not paid, Illinois law provides various methods for recovering delinquent taxes. While the county may foreclose on its tax lien, the most common method to collect delinquent taxes is via one of the "tax sale" methods provided by the property tax code. Real Estate Taxation at

§ 10.20. First, the county applies for a judgment and order of sale against the property. Once a judgment and order of sale is obtained, the county may "sell the property" at a tax sale. One particular type of tax sale is called the "annual sale," where properties with at least one year of delinquent taxes are sold to the public. (For example, properties with taxes incurred in 2010 and due but unpaid in 2011 will be sold at the 2012 annual sale). When the property is sold at an annual sale, the tax purchaser pays all taxes due on the property, the county loses its lien, and the tax purchaser receives a "Certificate of Purchase."[1]

What happens next depends on the actions of the delinquent taxpayer and the tax purchaser. The taxpayer has two years to redeem the property—two and a half years if the property is a home. 35 ILCS 200/21-350. The tax purchaser may, however, extend the period to three years total. 35 ILCS 200/21-385.[2] During the redemption period, the taxpayer can redeem the property by paying the tax purchaser, through the county clerk, all amounts due (which includes everything the tax purchaser paid to the county plus any penalty interest).

---

[1] Properties with two or more years of delinquent taxes may be sold at a "Scavenger Sale," where the tax purchaser may pay *less* than all the taxes due on the property. Real Estate Taxation § 10.32.

[2] During the redemption period, other taxes will come due. Those taxes may be paid by the property owner or the tax purchaser. If the tax purchaser pays the subsequent taxes, the redemption amount will increase correspondingly. The tax purchaser must satisfy any delinquent taxes before obtaining a tax deed. If the property owner pays the subsequent taxes, the redemption amount remains the same. *See* Real Estate Taxation §§ 10.12, 11.8. Here, the property owners paid their subsequent taxes.

Three to six months before the redemption period expires, the tax purchaser must file a petition for a tax deed in the circuit court of the county where he acquired the Certificate of Purchase. He must also give notice of the expiration of the redemption period to the taxpayer and anyone else with an interest in the property. *See* 35 ILCS 200/22-10, 22-30. The taxpayer, of course, may still redeem his property while the petition is pending, so long as the redemption period has not run. Once the redemption period has run, the taxpayer cannot redeem the property. At that point the tax purchaser has one year to act on its petition by applying for "an order on the petition that a [tax] deed be issued," taking that order to the county clerk to obtain a tax deed, and recording the tax deed. If these steps are not completed within a year, the tax purchaser loses his interest and the taxpayer keeps the property. 35 ILCS 200/22-30, 22-40, 22-85. If, however, there is an order of a court preventing the tax purchaser from applying for an order to issue a tax deed—such as the automatic stay in a bankruptcy proceeding—the one-year period is tolled. 35 ILCS 200/22-85. If the obstacle to obtaining the order is lifted, the tax purchaser may do so in the time that remains. If the tax purchaser obtains and records a tax deed, he becomes the owner of the property outright and all outstanding liens and mortgages are extinguished. *See* 35 ILCS 200/22-55.

However, under certain circumstances, the tax purchaser has another option. Instead of seeking a tax deed, he may apply to the county circuit court for a declaration that the tax sale was a "sale in error" for a reason listed in the statute. *See* 35 ILCS 200/21-310. One such reason is that the taxpayer petitioned for bankruptcy after the tax sale and before the

county issued a tax deed. 35 ILCS 200/21-310(b)(1). Under those circumstances, the circuit court will declare the sale to be a sale in error. *Id.* When the circuit court has done so, the tax purchaser is reimbursed by the county for everything he paid, plus interest (either at the penalty rate or a statutory rate of 12% per year, whichever is lower). 35 ILCS 200/21-315. The statute does not indicate whether the tax purchaser must seek a sale-in-error declaration within a certain period of time after learning of the taxpayer's bankruptcy. Apparently—and to the chagrin of the Clerk of Cook County (who has filed an amicus brief in this matter)—the tax purchaser can wait until just before the deadline to obtain a deed (which may be tolled) to seek a sale-in-error declaration, accruing interest at the county's expense the entire time.

*Facts of This Case*

In this case, Todd and Christina LaMont (the "debtors" or "taxpayers") own a home in the Village of Minooka in Grundy County, Illinois. The Village levied a special assessment in relation to some local improvements.[3] The debtors did not timely pay these taxes. In November 2008, Grundy County sold the debtors' property at an annual sale to Advantinet, which assigned its interest to Lyubomir Alexandrov. In December 2008, the debtors filed a voluntary Chapter 13 bankruptcy petition. It is not clear when Alexandrov first received notice of the bankruptcy proceeding because the

---

[3] Special assessments owed to a municipality are treated like taxes in every way that is relevant to this appeal. For convenience, we refer to the assessments in this case as "taxes" and to the government entity as the "county."

debtors listed the Village of Minooka as the creditor for their unpaid taxes in their bankruptcy petition.

With or without knowledge of the debtors' bankruptcy, Alexandrov filed a petition for a tax deed on August 2, 2011. When the redemption period expired on January 13, 2012, he applied for an order directing the county clerk to issue a tax deed. However, the circuit court would not enter the order while the debtors' bankruptcy was pending (so Alexandrov learned of the debtors' bankruptcy then, if not earlier). On January 26, 2012, Alexandrov made his first filing in bankruptcy court, moving for a declaration that the automatic stay in the debtors' case did not prevent him from obtaining a tax deed, or alternatively, for a modification of the automatic stay to permit him to obtain a tax deed. By that time, the debtors' Chapter 13 plan had been confirmed for nearly three years and the plan had provided for payment of the delinquent taxes directly to the Village of Minooka in installments (without paying any interest).

The bankruptcy court denied Alexandrov's motion, following a line of decisions that treat a tax purchaser's interest as a secured claim (a tax lien). *See In re Kasco*, 378 B.R. 207, 211 (Bankr. N.D. Ill. 2007); *In re Bates*, 270 B.R. 455, 465 (Bankr. N.D. Ill. 2001). Accordingly, the bankruptcy court held that Alexandrov's interest had been adequately treated in the plan and the automatic stay did (and should) apply to prevent him from obtaining a tax deed. Alexandrov immediately moved for reconsideration and, for the first time, argued that the automatic stay and the debtors' plan should not apply to him because he was prejudiced by the debtors' failure to notify him of the bankruptcy proceeding. The bankruptcy court saw this

motion as an inappropriate attempt to add an argument for appeal and denied the motion. Alexandrov appealed the bankruptcy court's decision to the district court, which affirmed and also rejected his notice objection. *In re LaMont*, 487 B.R. 488, 498 (N.D. Ill. 2012). Alexandrov appeals, arguing that the lower courts improperly characterized his interest as a claim and, accordingly, erred in denying his motion to either modify the automatic stay or declare that it did not apply.

At oral argument, the parties informed us that the debtors' Chapter 13 plan was a success; they made all payments pursuant to the plan. Accordingly, if Alexandrov's interest was properly treated as a secured claim, the debtors have satisfied their obligation. *See* 11 U.S.C. § 1327. If, however, as Alexandrov argues, his interest is not a claim (and therefore not treatable in bankruptcy), then he would be entitled to attempt to obtain a tax deed and take the debtors' home.[4]

## II. Discussion

In a Chapter 13 bankruptcy, the debtors propose and the court confirms a plan to provide for the financial recovery of the debtors by ordering, organizing, and modifying their payments to their creditors. If the debtors follow the plan, they will be discharged of any liabilities completely treated in the plan. Other liabilities, such as home mortgages, will be made current under the plan and will continue after the plan is

---

[4] We do not know whether Alexandrov ever received the money that the debtors paid to the Village of Minooka nor do we know whether Alexandrov ever sought a sale in error. Alexandrov has focused on his argument that his interest was not a claim that could be modified and paid in installments and that he need not seek a sale in error.

finished.[5] Creditors of the debtors are bound by the provisions of a confirmed plan. 11 U.S.C. § 1327(a). During the pendency of the bankruptcy, the automatic stay operates to prevent creditors from cutting in line to take property that will be treated in the plan. The automatic stay does so by explicitly forbidding many methods of taking property from the bankruptcy estate. *See* 11 U.S.C. § 362. Accordingly, if Alexandrov's attempt to obtain a tax deed is an attempt to take property that belongs to the bankruptcy estate, the stay applies. *See Id.* at § 362(a)(3), (4), (5) (forbidding "any act to obtain possession of property of the estate," "any act to … enforce any lien against property of the estate," and "any act to … enforce against property of the debtor any lien"). Further, if Alexandrov is a creditor of the debtors, then he is bound by how their plan treats his claim, making modification of the stay inappropriate.[6]

Alexandrov argues that his interest is a real property interest that automatically divests the debtors of title to their home after the redemption period expires (an executory interest), and therefore, modification is appropriate even if the stay applied.[7] Accordingly, whether the interest represented by

---

[5] At the time of the filing of debtors' petition, their home was encumbered by two mortgages.

[6] A creditor is an "entity that has a claim against the debtor." 11 U.S.C. § 101(10).

[7] *See* 11 U.S.C. § 362(a)(2)–(5). Alexandrov also argues that if his executory interest theory is correct, getting a deed to the debtors' home is merely "perfection" of his interest and does not violate the automatic stay. *See* 11

(continued...)

Alexandrov's Certificate of Purchase is a claim against debtors' property—or whether it is instead a kind of real property interest—is the central dispute in this appeal.

Fortunately, the bankruptcy code provides a definition of "claim" to guide our analysis. A claim is:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)[8]. The Supreme Court has "explained that Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting *Penn. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 563-64 (1990)). For example, in *Johnson*

---

[7] (...continued)
U.S.C. § 362(b)(3) (permitting perfection). That argument fails because it is based on an unreasonable interpretation of "perfection." *See In re Bates*, 270 B.R. at 468 (noting that perfection is a matter of priority of secured creditors, not obtaining ownership).

[8] The phrase "'claim against the debtor' includes claim[s] against property of the debtor." 11 U.S.C. § 102(2).

the Supreme Court held that a non-recourse mortgage was a claim because, even though the debtor was not personally liable if the mortgage was not paid, the bank could still foreclose on the house (an equitable remedy) and had a right to the proceeds from the sale of the debtor's home (a right to payment). This was so because "'right to payment' [means] nothing more nor less than an enforceable obligation … ."*Id.* (citing *Davenport*, 495 U.S. at 559). In *Davenport*, the Supreme Court held that a criminal defendant's restitution obligation was a liability on a claim that could be discharged in bankruptcy. The court reasoned that, despite the lack of a traditional creditor-debtor relationship, the interest in restitution was nonetheless a "right to payment" because it was an obligation to pay that could be enforced by incarcerating the defendant. *Davenport*, 495 at 559. Against this backdrop, we consider Alexandrov's arguments.

## A. A Certificate of Purchase Does Not Represent an Executory Interest

Alexandrov argues that when his interest was created at the time of the tax sale, it was a kind of future interest in real property, specifically, an executory interest. *See* Restatement (First) Property § 25, 158 (1936). Correspondingly, he argues that the taxpayers retained only a fee simple determinable, and therefore, that we should treat the real property in this case like we have treated real property that had been sold at a mortgage foreclosure sale. *See* Restatement (First) Property §§ 23, 44 (1936). There are two significant—and related—problems with Alexandrov's theory.

First, the decision Alexandrov relies on for the notion that a tax purchaser holds an executory interest, *Jackson v. Midwest P'ship*, 176 B.R. 156 (N.D. Ill. 1994), created the idea without any compelling authority. The court in *Jackson* looked to the judgment and sale that compose the tax sale procedure and observed that the holder of the Certificate of Purchase may eventually obtain title to the property and has some rights in the meantime. *See Jackson*, 176 B.R. at 158 (citing the predecessor to 35 ILCS 200/21-80 (permitting the tax purchaser to petition for a receiver to prevent waste)). The court surmised that the tax purchaser had more rights than a mere lien holder. *Id.* Ultimately, the court concluded that those extra rights suggested that the tax purchaser held an executory interest. *Id.*

However, we cannot assume that the Supreme Court of Illinois would hold that a tax purchaser's interest is a future interest in real property when the state statutory framework and decades of state court decisions say otherwise. *See Butner v. United States*, 440 U.S. 48, 55–56 (1979) (holding that state law governs the creation and definition of property rights). Illinois courts have consistently treated the tax purchaser's interest as a tax lien. *See Application of Cnty. Treasurer of Cook Cnty. (Wiebrecht v. City of Chicago)*, 304 N.E.2d 9, 12 (Ill. App. Ct. 1973); *City of Chicago v. City Realty Exchange, Inc.*, 262 N.E.2d 230, 233 (1970)). In *City Realty*, the Illinois Appellate Court explicitly held that a Certificate of Purchase was a lien for taxes in determining whether the tax purchaser had priority over a demolition lien. *City Realty*, 262 N.E.2d at 232–33. The Illinois Appellate Court reaffirmed this ruling in *Wiebrecht* while holding that a statute requiring a tax purchaser to satisfy

subordinate demolition liens was not retroactive. *Wiebrecht*, 304 N.E.2d at 12–13.[9]

Alexandrov argues that Illinois courts have reversed course on that position and cites *Application of Cnty. Collector (Howell v. Edelen)*, 383 N.E.2d 1224 (Ill. App. Ct. 1978), for the proposition that the tax purchaser has a "property right in the said real estate subject to redemption," not a tax lien. *Id.* at 1231. However, the court in *Howell* did not repudiate either *Wiebrecht* or *City Realty.* Indeed, *Howell* cites *Wiebrecht* as the sole support for the language upon which Alexandrov relies. *Howell*, 383 N.E.2d at 1231 (citing *Wiebrecht*, 304 N.E.2d at 12). So when the Illinois Appellate Court says that a tax purchaser has a "property right" in the real estate, *Howell*, 383 N.E.2d at 1231, the court means a "species of *personal* property, *a lien for taxes*." *Wiebrecht*, 304 N.E.2d at 12 (emphasis added). More recently, the Illinois Appellate Court reemphasized that a "tax certificate, prior to its redemption and issuance of a tax deed, is a mere species of personal property, and does not give its purchaser any equity or title to the property*"* and "a certificate holder has no real property interest in the land until the certificates have been redeemed and the petition for a tax deed has been granted." *Petition of Conrad Gacki Profit Sharing Fund (PJA Investments, Ltd. v. Conrad Gacki Profit Sharing Fund)*, 634 N.E.2d 1281, 1282–83 (1994) (citing *Wells v. Glos*, 115 N.E. 658 (Ill. 1917)). In fact, to the extent the Illinois Appellate Court has

---

[9] Ordinarily, a subordinate lien is eliminated without satisfaction when a tax purchaser obtains a tax deed. *See Lincoln Park Fed. Sav. & Loan Ass'n v. DRG, Inc.*, 529 N.E.2d 771, 772 (Ill. App. Ct. 1988); 35 ILCS 200/22-55; Real Estate Taxation § 11.20.

recognized any interest in the real property, it has been limited to those rights conferred statutorily by the Illinois property tax code. *See In re Application of Cnty. Collector* (*Edward Scott, LLC v. Nadine Sackor*), 909 N.E.2d 337, 340–42 (Ill. App. Ct. 2009) (cataloguing statutory rights and concluding that, because of those rights, a tax purchaser had enough "interest[] in the property"). The Illinois Appellate Court in *Edward Scott* referred to the broad language of *Conrad Gacki* as dicta, but only rejected that dicta to the extent the court in *Edward Scott* concluded that the statutory framework gave a tax purchaser enough interest in the property to be entitled by statute to notice of an earlier tax purchaser's petition for a tax deed. *Edward Scott*, 909 N.E.2d at 342 (citing 35 ILCS 200/22–10). Therefore, it is apparent that the Supreme Court of Illinois would not recognize any interest of the tax purchaser in the debtors' real property beyond those rights which the statutory framework creates. Accordingly, because Illinois courts repeatedly call a Certificate of Purchase a lien or a species of personal property (albeit with some statutory rights regarding the real property), we will not treat it as an executory interest in real property.[10]

The second problem with Alexandrov's theory is that treating property sold at a tax sale the same way as property sold at a foreclosure sale ignores the differences between the

---

[10] Moreover, the Illinois property tax code provides tax purchasers with a very generous sale-in-error provision in the event delinquent taxpayers enter bankruptcy, *see* 35 ILCS 200/21-310(b)(1), indicating that the legislature anticipated adverse treatment of a tax purchaser's interest in bankruptcy (that is, treatment as a claim among other claims). If the code gave the tax purchaser an executory interest, there would be no need for such concern.

transactions. Under Illinois law, a mortgage foreclosure sale should occur only after the statutory right of redemption has expired. *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 920 (7th Cir. 2003) (citing 735 ILCS 5/15–1507(b)). Therefore, after a foreclosure sale, "assuming that the redemption period has run, the purchaser at that sale has a presumptive right to eventual ownership of the property," subject only to confirmation that all formalities were observed. *Id.* at 921. Accordingly, subsequent to a foreclosure sale "the only property interest which the [debtors have] in the real estate after the foreclosure sale [is] the [statutory] right of redemption," "[t]he real property [] did not become part of the estate." *Matter of Tynan*, 773 F.2d 177, 179 (7th Cir. 1985). Under those circumstances, it is appropriate to lift the automatic stay so that the purchaser may pursue the ministerial steps to obtain legal title to property that he already has the right to own.

The circumstances may be similar in the tax sale context when a debtor files a bankruptcy petition *after* the redemption deadline has passed, *see In re Bates*, 270 B.R. 455, 469–70 (Bankr. N.D. Ill. 2001), but the circumstances are different if the petition is filed while time remains to redeem. Before the redemption period has expired, a property subject to a Certificate of Purchase still belongs to the delinquent taxpayer, legally and equitably. *In re Smith*, 614 F.3d 654, 658–59 (7th Cir. 2010) (stating that a "Certificate of Purchase … 'has no effect on the delinquent property owner's legal or equitable title to the property'" (quoting *In re Application of Cnty. Treasurer (A.P. Props., Inc. v. Ezra Chaim Props., LLC)*, 914 N.E.2d 1158, 1165 (Ill. App. Ct. 2009))); *see also Phoenix Bond & Indem. Co. v. Pappas*, 741 N.E.2d 248, 249 (Ill. 2000) (same). Alexandrov's argument

that the tax sale transforms the debtors' fee simple absolute interest into a fee simple determinable interest would change the debtors' title into defeasible title. That result is inconsistent with the Supreme Court of Illinois' explicit statement that the debtors' legal or equitable title is not affected by the tax sale. Accordingly, the debtors owned their home and, upon filing their bankruptcy petition, it became property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1).[11]

In sum, we will not abstract Alexandrov's interest into a future interest in real property, but will treat it as the unique statutory creature that it is. What Alexandrov holds is what Illinois courts refer to as a "species of personal property, a lien for taxes." *Wiebrecht*, 304 N.E.2d at 12. The peculiarity of his interest is that, if the debtors' real property is not redeemed, he may obtain not just the value of his "lien" but may take the real property in its entirety. Because the statutory framework provides this possibility of ownership in the future, the code also provides him with some rights to protect that interest, such as the right to petition for appointment of a receiver to prevent waste. *See* 35 ILCS 200/21-80. Accordingly, Illinois has given tax purchasers an unusual tax lien. The question remains, though, whether the unique statutory creature that Alexandrov owns is a claim.

---

[11] Even if the debtors only held the home in fee simple determinable, the property would still enter the estate unlike property after a mortgage foreclosure where *only* the statutory right of redemption enters the estate.

### B. Alexandrov Holds a Claim Against the Debtors or Their Property

As discussed above, a claim is either a right to payment or a right to an equitable remedy. 11 U.S.C. § 101(5). The Supreme Court of Illinois has explained, in the context of Illinois' Uniform Fraudulent Transfer Act ("UFTA"), that a tax purchaser has no direct right to payment from the taxpayer, but rather that the property tax code sets up an indirect right to payment mediated by the county. *A.P. Properties, Inc. v. Goshinsky*, 714 N.E.2d 519, 522 (Ill. 1999) ("the procedure set forth in the Code establishes a debtor/creditor relationship between the purchaser and the county and a debtor/creditor relationship between the county and the landowner"). The court held that the attenuated nature of the right to payment meant that a tax purchaser did not have a right to payment from the *taxpayer*, and so, did not hold a claim against the taxpayer. *Id.* ("creditor must demonstrate that the debtor owes or potentially owes a 'payment' to the creditor"). The underlying rationale is that the taxpayer has the *option* to pay the redemption amount, but not the *obligation* to pay—and even if there is an obligation to pay, it is to the county, not to the tax purchaser.[12] *Id.* ("Simply put, no set of facts exists or could exist that would allow [the tax purchaser] to collect money from [the taxpayers]"). Only *if* the taxpayer *opts* to pay the

---

[12] *A.P. Properties* was decided in the "Scavenger Sale" context where the taxpayer remains liable to the county. 714 N.E.2d at 522 (citing 35 ILCS 200/21–440). In the "Annual Sale" context the taxpayers are only liable to the county if the tax purchaser obtains a sale-in-error declaration. *See* 35 ILCS 200/21–310(b)(1).

redemption amount to the county, does the tax purchaser have a right to the redemption amount *from the county*.

The Supreme Court of Illinois held that a tax purchaser does not hold a "right to payment" under Illinois' UFTA, which defines "right to payment" the same as 11 U.S.C. § 101(5)(A). But that does not mean that his interest is not a right to payment within the meaning of the bankruptcy code.[13] In addition to being two different statutes, the bankruptcy code also includes a construction clause which expands the definition of "claim" to include claims against the debtor's property. 11 U.S.C. § 102(2). Illinois' UFTA has no such provision. Further, Illinois' UFTA entirely lacks the bankruptcy code's alternate definition of "claim" in § 101(5)(B) as "an equitable remedy for breach of performance." Thus, we must focus on the Supreme Court's interpretation of "claim" in the bankruptcy code.

---

[13] Alexandrov points to the rule that state law governs the creation and definition of his interest as a tax purchaser, *see Butner v. United States*, 440 U.S. 48, 55–56 (1979), and argues that his interest is, therefore, not a right to payment for bankruptcy purposes either. The argument that *A.P. Properties*' holding is determinative of whether a tax purchaser holds a bankruptcy claim has been accepted by some of the decisions of the bankruptcy courts in Illinois. *See, e.g., In re Blue*, 247 B.R. 748, 751–52 (Bankr. N.D. Ill. 2000). While Alexandrov is no doubt correct that state law governs the definition of property rights, he, and the court in *Blue,* attempt to stretch the principle too far. The Supreme Court of Illinois' holding that his interest, as defined by state law, does not amount to a right to payment for purposes of Illinois' UFTA does not control this court's determination of whether his interest, as defined by state law, amounts to a right to payment as defined in the bankruptcy code.

In *Johnson*, a bank held a non-recourse mortgage on a debtor's property. The Supreme Court concluded that a right to payment existed in the bank's right to proceeds from the sale of the mortgaged property. That is, if the owner sold the property, the bank had a right to take the value of its lien at closing. *Johnson*, 501 U.S. at 84. The fact that the right to payment only arose *if* the owner of the property sold it to a third party did not affect the Court's decision. Similarly, in this case no problem arises from the fact that the tax purchaser's right to payment of the redemption amount only arises if the taxpayer pays it to the county. The reason the indirectness of the right to payment between the tax purchaser and the taxpayer is not an issue is because the tax purchaser holds a right to payment from the *property* of the taxpayer. Simply put, if redemption of the property is made, the tax purchaser has a right to payment from the money paid to redeem the property. *See Johnson*, 501 U.S. at 85 (emphasizing that the court's rationale was consistent with the bankruptcy code's treatment of claims against property of the debtor as claims against the debtor and citing § 102(2)); *Bates*, 270 B.R. at 463 ("tax purchaser's certificate of purchase creates 'a charge on the real estate for payment of the debt represented by the taxes'") (citing *City Realty*, 262 N.E.2d at 233); *Phoenix Bond*, 741 N.E.2d at 249 (stating that a tax purchaser has a right to payment from the county after the taxpayer redeems).[14]

---

[14] In fact, here, there is even more reason to treat the indirect right to payment as a right to payment. If the tax purchaser seeks a declaration of a sale in error, all of the county's rights are revived and the county certainly holds a claim against the property of the debtor. *See* 35 ILCS

(continued...)

Additionally, Alexandrov holds a "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5)(B). This is true because Alexandrov stands in the shoes of the county. The debtors' failure to timely pay their taxes was a breach of performance owed the county. That breach gave rise to various equitable remedies; the county may foreclose on its tax lien or pursue a tax sale of the property. *See, e.g.*, 35 ILCS 200/21-75 (tax foreclosure); 35 ILCS 200/21-190–21-255 (annual tax sale); *see also Johnson*, 501 U.S. at 84 (stating that a right to foreclose was an equitable remedy under § 101(5)(B)).[15] To "sell" the property at an annual tax sale the county first gets a judgment from the county circuit court "for the amount of taxes …, interest, penalties and costs due" on the property and gets an order to sell the "propert[y], or so much of [it] as shall be sufficient to satisfy the amount of taxes …, interest, penalties and costs" due on the property. 35 ILCS 200/21-180. Commentators interpret this language to mean that the county's lien is being sold, not the property itself. *See* Real Estate Taxation § 10.24.[16] Further, when a tax purchaser files a petition for a tax

---

[14] (...continued)
200/21–310(b)(1).

[15] The breach also "[gave] rise to a right to payment" from the debtors to the county as required by 11 U.S.C. § 101(5)(B). *In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994) (interpreting § 101(5)(B)); *see also A.P. Properties*, 714 N.E.2d at 522 (stating that 35 ILCS 200/21-440 gives the county a right to payment if the taxpayer breaches his obligation to pay his property taxes).

[16] This interpretation is consistent with the Supreme Court of Illinois'
(continued...)

deed, it is filed in the same proceeding that the county brought for a judgment and order of sale. *See* Real Estate Taxation § 11.5 (citing *Vulcan Materials Co. v. Bee Const.*, 449 N.E.2d 812, 814–15 (Ill. 1983)). The tax purchaser merely holds the Certificate of Purchase and waits two to three years to enforce the county's equitable remedy (tax lien) for nonpayment of taxes if redemption is not made. Indeed, the reason the period is so long is no doubt because the purpose of tax sales is not to strip taxpayers of their property, but to ensure the collection of taxes. *See C & C Energy, L.L.C. v. Cody Invs., L.L.C.*, 41 So. 3d 1134, 1140 (La. 2010); *Tracy v. Chester Cnty., Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985).

In effect, what the tax sale procedure does is sell the county's equitable remedy to a third party, the tax purchaser. In this way, the tax sale procedure provides immediate income to the county. In order to incentivize the purchase of the county's equitable remedy, the statutory framework enlarges the remedy by putting the tax purchaser in a position to take the property entirely if the taxes are not paid in the form of a redemption. Notwithstanding the expansion, the tax purchaser still owns, as modified, the county's equitable remedy against the property for nonpayment of taxes. His petition for a tax deed is merely finishing the sale that the county started for

---

[16] (...continued)

unequivocal statement that, when a tax purchaser obtains a Certificate of Purchase for delinquent taxes at the annual sale, it "does not affect the delinquent property owner's legal or equitable title to the property," *Phoenix Bond & Indem. Co. v. Pappas*, 741 N.E.2d 248, 249 (Ill. 2000), and with Illinois courts' repeated statements that the tax purchaser holds a tax lien. *See City Realty*, 262 N.E.2d at 233.

nonpayment of taxes. Alexandrov holds a non-recourse tax lien that may be equitably enforced by obtaining a tax deed to the debtors' home. Accordingly, Alexandrov holds a right to payment, or alternatively, a right to an equitable remedy against the debtors' property. "Either way, there can be no doubt that the [tax purchaser's] interest corresponds to an 'enforceable obligation' of the debtor." *Johnson*, 501 U.S. at 84. Therefore, the tax purchaser holds a claim against the debtors that may be treated in bankruptcy. *Id.*

### C. The Expiration of The Redemption Period Does Not Undermine the Plan

Alexandrov's claim is secured by the debtors' property. A Chapter 13 plan may "modify the rights of holders of secured claims." 11 U.S.C. § 1322(b)(2). The plan may not modify security interests in real property that is the debtors' principal residence. But Alexandrov's claim is not a security *interest* because it was not created by agreement. *Id.*; 11 U.S.C. § 101(51). Here, the bankruptcy court treated Alexandrov's secured claim by providing for payment to the Village of Minooka (the entity to whom the tax was originally owed) in installments over the course of the plan. Alexandrov asserts that this was not a proper redemption. Therefore, he insists that the redemption period has expired, the debtors no longer have right to ownership of their property, and the automatic stay should be modified to permit him to obtain a tax deed.

His assertion that the full redemption amount must be paid in a lump sum before the redemption deadline—i.e., that a proper redemption must be made—is mistaken. The plan is treating his secured claim, *not* formally redeeming the prop-

erty. The bankruptcy code provides that a Chapter 13 plan may modify a secured claim and pay it over the course of the plan.[17] How a Chapter 13 plan operates in the tax sale context has been correctly explained by *In re Bates*, 270 B.R. at 465–66. Here, because the plan succeeded, Alexandrov's claim was satisfied—he no longer has any right to exercise the equitable remedy of obtaining a tax deed.[18] The expiration of the redemption period did not affect the plan's treatment of Alexandrov's secured claim except that, if the debtors had failed to comply with the plan, then his equitable remedy would have survived and he could have sought an order to issue a deed. *Id.* at 468–69.[19] Accordingly, the expiration of the redemption period does not affect the validity of the plan or necessitate a modification of the automatic stay so long as the debtors comply with the plan.

---

[17] Alexandrov also contends that the plan improperly paid the money to the Village and paid it without interest. These claims are not before us because Alexandrov only appeals the lower court's refusal to modify the automatic stay—which only depends on whether he holds a claim. He has not challenged the plan—which is what he must do if he thinks his claim was improperly treated.

[18] This presumes that the plan is valid which we do not decide because no challenge to the plan is before us.

[19] Alexandrov makes various other arguments that either depend on his incorrect theory that he holds an executory interest or on his incorrect theory that the Chapter 13 plan is redeeming the debtors' property. *See Id.* at 465–66. These arguments fail because they depend on his incorrect theories.

### D.  The Automatic Stay Applies

The automatic stay provision of the bankruptcy code provides that a petition for bankruptcy "operates as a stay" of "any act to obtain possession of property of the estate" or "any act to … enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3), (4). Alexandrov's attempt to obtain a tax deed is an act to obtain possession of property of the estate and to enforce his lien for taxes. It is therefore properly forbidden by the stay. Further, because the debtors have satisfied their obligations under the plan, there is no reason to modify the stay.

### E.  Notice

Lastly, Alexandrov contends that he should not be bound by the plan because he was not given adequate notice of the debtors' bankruptcy and proposed plan. This argument is waived because he first made it in a motion for reconsideration. *Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) ("[A]ny arguments … raised for the first time in [a] motion to reconsider are waived" (citation omitted)). Alexandrov has also failed to reply to the debtors' argument on appeal that he waived his notice objection, thereby conceding the debtors' argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."). Further, the district court did not err in concluding that there was no reason to grant Alexandrov relief from the stay on account of a lack of notice—the plan provided for his claim and he may seek a sale-in-error if he is not satisfied with the plan's provision. *In re LaMont*, 487 B.R. at 497–98.

### F.  Other Considerations

The Clerk of Cook County, as amicus in this case, urges us to consider the impact of our ruling on the operations of his office. Specifically, the Clerk points out: (1) that his office needs to be able to set a date certain for redemption; (2) that his office cannot accept payment of a redemption amount in installments; and (3) that the opportunity for a tax purchaser to delay seeking a sale in error may leave the county on the hook for a significant amount of interest.

First, our holding does not toll the redemption period. The redemption period expires when it expires. All that is tolled is the tax purchaser's time to obtain a tax deed after the redemption period expires, and that is a direct result of the Illinois property tax code. 35 ILCS 200/22-85. Second, if the county clerk is unable to receive installment payments, he should inform the bankruptcy court, which may adopt another solution such as payment directly to the tax purchaser[20] or retention of the installment payments by the trustee until the whole amount may be paid to the county. It may be prudent for bankruptcy courts to attempt the latter method if the full payment may be made within the redemption period—while the code does not require an actual redemption, nothing prevents the bankruptcy court from ordering one for simplicity. Third, unfortunately, the risk of the county being on the hook for interest while the time to obtain a tax deed is tolled is

---

[20] *See* Real Estate Taxation § 10.69 (explaining an informal method where the taxpayer pays the tax purchaser, receives the endorsed Certificate of Purchase, and turns it in to the county clerk for cancellation so that the county's tax records show that the Certificate of Purchase was satisfied).

built into the code. *See* 35 ILCS 200/22-85; 21-310(b)(1). Any solution to that problem is for the courts or legislature of Illinois.

### III. Conclusion

Alexandrov holds a secured claim which has been treated by the debtors' Chapter 13 plan. An application for an order to issue a tax deed to the debtors' property would violate the automatic stay. The lower courts correctly concluded that the stay applied and should not be modified. Therefore, the judgment of the district court is AFFIRMED.